This was a suit by S. H. Buchanan against the Houston Texas Central Railroad Company and the Gulf, Colorado Santa Fe Railway Company to recover of the first defendant $175 as a penalty for the alleged failure of said defendant, for one day, to furnish seven stock cars demanded by plaintiff, and to recover of both defendants $1,500 damages alleged to have been sustained by a shipment of 300 head of stock cattle made by plaintiff April 15, 1903, over the lines of railroad of defendants and the Atchison, Topeka Santa Fe Railway Company, from Llano, Texas, to Fairfax, Oklahoma. Trial May 3, 1905, resulted in a verdict and judgment for plaintiff against the Houston Texas Central Railroad Company for $175 by way of penalty, and for $561.25 damages and interest; and against the Gulf, Colorado Santa Fe Railway Company for $337.25 damages and interest. *Page 623 
There are assignments of errors which object to so much of the judgment as is against the Houston Texas Central Railroad Company for the amount of penalties recovered for the failure to furnish cars in which to ship the cattle within the time requested. The cattle in question were to be transported from Llano, Texas, to Fairfax, in the Territory of Oklahoma. One of the objections is that the statute under which the demand for cars was made does not relate to an interstate shipment. Another objection is to the effect that the demand was for cars to be used in transporting the cattle over the entire route, much of which was beyond the line of the Houston Texas Central Railroad Company, and was over the lines of connecting carriers. Other objections were urged to the law upon which the demand for cars was predicated, but the two mentioned will only be noticed by us in disposing of so much of the judgment as relates to penalties.
We have been informed through publication in some of the daily newspapers of the State that the Supreme Court of the United States in the case of Houston T. C. R. R. Co. v. Mayes, on writ of error from this court, has held the law in question to be unconstitutional as being opposed to the Interstate Commerce clause of the constitution. We have not read the opinion of that court, nor have we received any official information as to the full nature and effect of the decision in the case mentioned. However, while we have no reason to doubt the correctness of the published report, we have reached the conclusion that the statute, if it could be held valid, does not apply to the demand made for cars in this instance. The written demand is as follows:
"Llano, Texas, April 8, 1903.
"Mr. E. W. Tarrence, Agent,
H. T. C. R. R. Co., Llano, Texas.
"Dear Sir: For the purpose of making a shipment of cattle from Llano, Texas, to Fairfax, O. T., I desire seven stock cars at Llano, Texas, on the 14th day of April, A.D. 1903. I herewith tender you one-fourth of the amount of freight charges for the use of such cars.
Very truly yours, S. H. Buchanan."
The evidence shows that Llano is a station upon the Houston Texas Central Railroad; and it is a fact known that it does not operate a road leading to Fairfax, Oklahoma Territory. The cars were used and intended to be used over the Houston Texas Central Railroad, and from it transferred to its connecting line, the Gulf, Colorado Santa Fe Railway, which would carry the cars and the cattle to the point of destination. The cars were not delivered on the day requested, which fact was the basis of the judgment for penalties against the Houston Texas Central Railroad Company.
We have given this written demand much consideration, in order to determine what construction should be given to it, and we have concluded to hold that it is an express request for cars to be furnished and to be used in the transportation of the cattle from Llano to Fairfax. The railroad has interposed the defense that under the statute upon which this demand is predicated they were not required to furnish cars *Page 624 
to be used by a connecting carrier to transport the shipment to its destination. In other words, that the Houston Texas Central Railroad Company was not required to heed the request for cars to be used beyond its own line. There is no evidence of any partnership agreement or traffic arrangements between the two roads with reference to the use of cars owned by either road. We find nothing expressly stated in the statute in question which requires the initial carrier to furnish cars to be used by connecting lines in the transportation of commodities to the point of destination. The statute being penal in character will receive a strict construction, and we will not, by implication, read into it words that will impose such a burden or duty upon the carrier furnishing the cars; and if the law could be held to require this to be done without the consent of the carrier, we would have serious doubt as to its validity. The railway company is the owner of its cars and is entitled to their exclusive use, as much so as any other property it may possess; and if it could be forced against its consent to furnish and surrender its cars to a connecting carrier to be used by it, for the same reason it could be compelled to furnish the connecting line with locomotives and train crews, and anything else that might be necessary or needful to be used by the latter carrier in the operation of its public business. Therefore we hold that, under the demand in question, the penalties could not be recovered.
Appellants' eighth assignment of error is well taken. It complains of the action of the trial court in refusing appellants' special instruction No. 3. This charge has been compared with that approved in Houston T. C. R. R. Co. v. Everett, 13 Texas Ct. Rep., 930 (99 Texas, ___), and, other than a slight change in verbiage, we find no difference between the two instructions. It appears from the evidence of the witness Buchanan that a demand was made on the agent at Llano to bill the cattle through by way of Lampasas; or, if that could not be done, then by way of McNeill. The cattle were billed and shipped from Llano by way of Brenham, a route 150 or 200 miles longer than by way of Lampasas or McNeill. At Brenham, they were delivered to the Gulf, Colorado Santa Fe Railway, the connecting line of the Houston Texas Central. The appellee in his direct testimony testified: "We were first informed that they would not take us by way of Lampasas when we were ready to start, after we had loaded our stock, they told us then for certain that we wouldn't get to go that way. After we were loaded and ready to start, I signed up one written contract." The contract mentioned provided for transportation over the first line of road to Brenham, and he says that there was no further discussion of the terms of shipment "after we loaded, and prior to the time I signed this written contract. I agreed to go by McNeill or Lampasas. They wouldn't take us either way." The evidence shows that there was a through connecting system of roads from Llano to Fairfax by way of Lampasas or by McNeill, and that if the cattle had been transported by way of Lampasas they would have reached the Gulf, Colorado Santa Fe road at that point, and which would have given a continuous route to the point of destination.
On cross-examination, the plaintiff testified: "At the time I handed in my order, I think I specified a particular route. I did not specify *Page 625 
any particular route in that written demand. At the time I was there he asked me which way I wanted to go, and I told him by Lampasas. He told me I could ship to Lampasas by the local rate and local billing. My demand was that he ship them by way of Lampasas under through billing, all the way through in the same cars to destination. I wanted them billed through from Llano to Fairfax by way of Lampasas, go through under through billing in the same cars. Then he told me he could not do that, he would bill me local to Lampasas at the local rate, and then me make my own arrangements with the Santa Fe at Lampasas. I didn't want that. I then demanded that he do the same thing, through billing and through cars by way of McNeill and Milano Junction. He refused that, but said he could do it by the local rate to McNeill, and then me make my arrangements with the I. G. N. and Santa Fe. Both of those I refused, the local part of it, and demanded that I go through under through billing from Llano to Fairfax at $63.25 a car — which was what he told us the rate was. I wasn't willing to pay more than $63.25 a car for the freight to that point, because he told me that was the rate, and I wasn't willing to have the local billing or local rates. He told me the Brenham route was the shortest route he could give you through billing and through rates by. He said the routes by Brenham or Hempstead were still further, and he gave the shortest route he said he could give under that billing."
There is evidence that shows that at the time this shipment was made there was no arrangement between the two roads as to a through billing other than by way of Brenham, and if this fact is true, the demand of the plaintiff in the evidence last quoted, will settle the case against him as to the claim for damages growing out of the longer haul on account of routing by Brenham. And if the evidence was conclusive upon the question that this was the only route under a through billing that could be given, we would render the judgment in appellant's favor on this branch of the case; but, however, there may be some question as to whether or not the agent of Llano was correct in the statement that he made to the plaintiff that he could not bill through by way of Lampasas or McNeill and Milano. If the plaintiff requested a through billing and transportation by either of these shorter routes, and it was wrongfully denied him by the Houston Texas Central Railroad Company, when it, under its traffic arrangements with the other roads had the power or authority to grant it, the H. T. C. could be held liable for any damages that might have resulted by reason of the longer haul and routing by Brenham, unless that road would be protected by the written contract signed and executed by the plaintiff under which the cattle were transported. If the plaintiff voluntarily and under circumstances that would make the written contract binding upon him, agreed to ship by Brenham, or waived the right previously demanded for transportation by Lampasas or McNeill, then he is in no condition to complain. But if he was deceived and led into the execution of this contract by reason of false information given him by the agent of inability to through route by Lampasas or McNeill; or if the contract was executed under such circumstances as to bring its validity into question under the rule announced in Railway Co. v. Carter, 9 Texas Civ. App. 687[9 Tex. Civ. App. 687], then plaintiff *Page 626 
would be entitled to recover, provided the cattle sustained any injury by reason of being transported by the longer route.
The eleventh paragraph of the charge of the trial court, which is complained of in the ninth and tenth assignments of error, abstractly presents a correct proposition of law; but, however, the principle there announced should, upon another trial, be so presented as to be in accord with the views expressed in this opinion. As before said, the plaintiff admits that he was informed before the cattle were loaded that there could be no through billing from Llano to Fairfax other than by Brenham; and if this was true, the plaintiff could not select a different route and exact a through billing when the carrier was not prepared to give it, and he had been informed of this fact. The charge given and complained of omits this phase of the case.
We overrule the twelfth and thirteenth assignments of error. We have had some difficulty in reaching a conclusion upon the question raised in the fourteenth assignment of error, but have finally concluded that the action of the court in sustaining the special exception was not erroneous.
No error is pointed out in the fifteenth and sixteenth assignments.
For the errors discussed, the judgment is reversed and the cause remanded.
Reversed and remanded.